IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ERIN C. SANBORN-ALDER, | § | |
| Individually and as Independent | § | |
| Executrix of the Estate of | § | |
| Clifford Alder, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION H-09-0806 |
| | § | |
| CIGNA GROUP INSURANCE, | § | |
| LIFE INSURANCE COMPANY OF NORTH | § | |
| AMERICA, CBCA ADMINISTRATORS, | § | |
| INC., and NATIONAL EMPLOYMENT | § | |
| BENEFIT COMPANIES, INC., | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

Pending before the Court in the above referenced cause, alleging wrongful denial of insurance benefits, are the following motions: (1) Defendant Life Insurance Company of North America's ("LINA's) motion for summary judgment (instrument #69); (2) Defendant National Employee Benefit Companies, Inc.'s ("NEBCO's") motion for summary judgment (#80); (3) NEBCO's motion to dismiss LINA's cross claim (#82); and (4) LINA's motion for leave to amend cross claims (#87).

-1-

The sole remaining claim[1] in this action is recovery of $400,000 in voluntary life insurance benefits under the Employment Retirement Insurance Security Act of 1974 ("ERISA"), 20 U.S.C. § 1132(a)(1)(B),[2] brought by Plaintiff Erin Sanborn-Alder ("Sanborn-Alder"), Individually and as independent executrix of the estate of her deceased husband, Clifford L. Alder.

After reviewing the parties submissions and the applicable law, the Court concludes that LINA's motion for summary judgment should be granted and all parties other than Plaintiff and LINA should be dismissed with prejudice for the reasons stated below.

## I.   Relevant Law

*A.   Standards of Review*

1.  Federal Rule of Civil Procedure 56(c)

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The movant has the burden to demonstrate that no genuine

---

[1] This Court has previously dismissed Plaintiff's state law causes of action, breach of fiduciary duty under 29 U.S.C. § 1132(a)(2), claims for equitable relief under 29 U.S.C. § 1132(a)(3), and claims against CIGNA Group Insurance, and it struck Plaintiff's jury demand.  #60.

[2] Section 1132(a)(1)(B) provides, "A civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his right under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

issue of material fact exists and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 317, 323 (1986). The substantive law governing the claims identifies the essential elements and thus indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 317, 325 (1986).

Where the non-movant bears the burden of proof at trial, the movant need only point to the absence of evidence to support an essential element of the non-movant's case; the movant does not have to support its motion with evidence negating the non-movant's case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

If the movant succeeds, the non-movant must come forward with evidence such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248.   The non-movant "must come forward with 'specific facts showing there is a genuine issue for trial.'" *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).   "A factual dispute is deemed 'genuine' if a reasonable juror could return a verdict for the nonmovant, and a fact is considered 'material' if it might affect the outcome of the litigation under the governing substantive law." *Cross v. Cummins Engine Co.*, 993 F.2d 112, 114 (5th Cir. 1993).   Summary judgment is proper if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477

U.S. at 322-23; *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006). Although the court draws all reasonable inferences in favor of the non-movant, the non-movant "cannot defeat summary judgment with conclusory, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Center*, 476 F.3d 337, 343 (5th Cir. 2007). Conjecture, conclusory allegations, unsubstantiated assertions and speculation are not adequate to satisfy the nonmovant's burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1079 (5th Cir. 1994); *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002). "'[A] subjective belief of discrimination, however genuine, [may not] be the basis of judicial relief.'" *Lawrence v. Univ. of Texas Medical Branch*, 163 F.3d 309, 313 (5th Cir. 1999), *quoting Elliott v. Group Med. & Surgical Serv.*, 714 F.2d 556, 567 (5th Cir. 1983). Nor are pleadings competent summary judgment evidence. *Little,* 37 F.3d at 1075; *Wallace v. Texas Tech. U.*, 80 F.3d 1042, 1045 (5th Cir. 1996).

A district court may not make credibility determinations or weigh evidence when deciding a summary judgment motion. *Chevron Phillips*, 570 F.3d 606, 612 n.3 (5th Cir. 2009), *citing EEOC v. R.J. Gallagher Co.*, 181 F.3d 645, 652 (5th Cir. 1999). Nor does the court have to sift through the record in search of evidence to support opposition to summary judgment. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

2.  Federal Rule of Civil Procedure 12(b)(6)

When a district court reviews a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), it must construe the complaint in favor of the plaintiff and take all well-pleaded facts as true. *Kane Enterprises v. MacGregor (US), Inc.*, 322 F.3d 371, 374 (5th Cir. 2003), *citing Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)(citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965, *citing* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"). "*Twombly* jettisoned the minimum notice pleading requirement of *Conley v. Gibson*, 355 U.S. 41 . . . (1957)["a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"], and instead required that a complaint allege enough facts

to state a claim that is plausible on its face." *St. Germain v. Howard*,556 F.3d 261, 263 n.2 (5th Cir. 2009), *citing In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)("To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"), *citing Twombly*, 127 S. Ct. at 1974). *See also Alpert v. Riley*, No. H-04-CV-3774, 2008 WL 304742, *14 (S.D. Tex. Jan. 31, 2008). "'A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Montoya v. FedEx Ground Package System, Inc.*, ____ F.3d ____, No. Civ. A. L-08-39, 2010 WL 3081504, * 3 (5th Cir. Aug. 9, 2010), *quoting Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009). Dismissal is appropriate when the plaintiff fails to allege "'enough facts to state a claim to relief that is plausible on its face'" and therefore fails to "'raise a right to relief above the speculative level.'" *Montoya*, 2010 WL 3081504 at * 3, *quoting Twombly*, 550 U.S. at 555, 570.

In *Ashcroft v. Iqbal*, 129 S. Ct. at 1940, the Supreme Court, applying the *Twombly* plausibility standard to a *Bivens* claim of unconstitutional discrimination and a defense of qualified immunity for government official, observed that two principles inform the *Twombly* opinion: (1) "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." . . . Rule 8 "does not unlock the doors of

discovery for a plaintiff armed with nothing more than conclusions."; and (2) "only a complaint that states a plausible claim for relief survives a motion to dismiss," a determination involving "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

Furthermore, the plaintiff must plead specific facts, not merely conclusory allegations, to avoid dismissal. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) "Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief . . . ." *Rios v. City of Del Rio, Texas*, 444 F.3d 417, 421 (5th Cir. 2006), *cert. denied*, 549 U.S. 825 (2006).

**B.   ERISA**

ERISA "permits a person denied benefits under an employee benefit plan to challenge that denial in federal court." *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008), *citing* 29 U.S.C. § 1001, *et seq.*, and 29 U.S.C. § 1132(a)(1)(B).

An ERISA plan administrator performs two tasks in deciding whether to permit or deny a benefit claim:  it decides the facts underlying the claim and it construes the terms of the plan. *Wade v. Hewlett-Packard Development Co. LP Short Term Disability Plan*, 493 F.3d 533, 537 (5th Cir. 2007).  Its factual determinations are reviewed for abuse of discretion, while its construction of the plan's terms is usually reviewed *de novo*. *Id.* When the ERISA

benefit plan gives the plan administrator discretionary authority to construe the terms of the plan, however, the court reviews the administrator's construction of plan terms and denial of a claim for benefits for abuse of discretion. *Id.*; *Cooper v. Hewlett-Packard Co.*, 592 F.3d 645, 651-52 (5th Cir. 2009). With regard to ERISA, "abuse of discretion" is similar in meaning to "arbitrary and capricious." *Cooper*, 592 F.3d at 652. The claimant bears the burden of proving that the plan administrator abused its discretion. *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2005).

The Fifth Circuit applies a two-step analysis to review discretionary determinations by an ERISA plan administrator: (1) the court decides whether the determination was legally correct, and if so, there is no abuse of discretion; and (2) if it was legally incorrect, whether the administrator's interpretation was an abuse of discretion. *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 246 & n.2 (5th Cir. 2009). The Court can bypass the first step if it can readily determine whether the decision was not an abuse of discretion. *Id.*

To evaluate abuse of discretion, the court decides whether the record adequately supports the administrator's decision with substantial evidence, which a reasonable mind might accept as sufficient to support the administrator's conclusion. *Wade*, 493 F.3d at 541. An administrator's decision will be upheld "'if it is

supported by substantial evidence.'" *Cooper*, 592 F.3d at 652*, quoting Meditrust Fin. Servs. Corp. v. Sterling Chems. Inc.*, 168 F.3d 211, 214 (5th Cir. 1999). "'Substantial evidence is 'more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id., quoting Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2005). Because the district court is usually limited to the administrative record, the court not only questions whether that record supports the administrator's decision, but it can conclude that the administrator abused its discretion if the administrator denied the claim without some concrete evidence in that record. *Gooden v. Provident Life & Accident Ins. Co.*, 250 F.3d 329, 333 (5th Cir. 2001). The administrator's decision is not an abuse of discretion if it is "'based on evidence, even if disputable, that clearly supports the basis for its denial.'" *Demand v. Unum Life Ins. Co. of America*, No. CIV A 3:07CV1785-B, 2009 WL 90480, *9 (N.D. Tex. Jan. 13, 2009), *quoting Vega Nat'l Life Ins. Servs., Inc.*,188 F.3d 287, 299 (5th Cir. 1999)(*en banc*). "A decision is arbitrary only if made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Cooper*, 592 F.3d at 652*, citing Meditrust*, 168 F.3d at 215.

Where the Defendant is both the Plan administrator and the insurer, raising the possibility of a conflict of interest, as is

the case here with LINA, the Fifth Circuit recently changed its approach from a sliding-scale standard of review ("the greater the evidence of conflict on the part of the administrator, the less deferential our abuse of discretion standard will be") to weighing any conflict as a factor in the determination whether the administrator abused its discretion in denying benefits *Crowell v. CIGNA Group Ins.*, No. 09-51086, 2011 WL 365284, *5 (5th Cir. Feb. 7, 2011), *citing Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008), *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 247 & n.3 (5th Cir. 2009), and *Schexnayder v. Hartford Life & Accident Ins. Co.*, 600 F.3d 465 (5th Cir. 2010). In *Schexnader*, *id.* at 469, the Fifth Circuit explained,

> In reviewing the plan administrator's decision, we take into account . . . several different considerations. These factors are case-specific and must be weighed together before determining whether a plan administrator abused its discretion in denying benefits. Any one factor may act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance.

Where circumstances surrounding the administrator's decision suggest "'procedural unreasonableness,'" the court might give "more weight to a conflict of interest." *Crowell*, 2011 WL 365284 at *5. In *Holland*, the panel found that the conflict was a minimal factor and that the evidence was more than enough to support a denial of benefits. *Id.*

-10-

ERISA, 29 U.S.C. § 1133(2), mandates that a benefit claim is entitled to a "full and fair review," which requires that a claim administrator give specific grounds for its denial of a benefit claim. *Cooper*, 592 F.3d at 652, *citing Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389, 393 (5th Cir. 2006).

ERISA's procedural requirements are listed in 29 U.S.C. § 1133, and the regulations promulgated by the Department of Labor are found in 29 C.F.R. 2560.503-1(g)(1)(i)-(iv)(2000). These require the plan to "(1) provide adequate notice; (2) in writing; (3) setting forth the specific reasons for such denial; (4) written in a manner calculated to be understood by the participant; and (5) afford a reasonable opportunity for a full and fair review by the administrator." *Wade*, 493 F.3d at 540. A challenge to ERISA procedures is reviewed under a standard of substantial compliance. *Id., citing Lacy v. Fulbright & Jaworski*, 405 F.3d 245, 257 (5th Cir. 2005). "Technical noncompliance with ERISA procedures will be excused so long as the purpose of section 1133 has been fulfilled"; "the purpose of section 1133[3] is 'to afford the beneficiary an

---

[3] Section 1133 states that every employee benefit plan must

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

explanation of the denial of benefits that is adequate to ensure meaningful review of that denial.'" *Id.* at 654-55, *quoting Robinson*, 443 F.3d at 393, and *Lafleur v. La. Health Serv. & Indem. Co.*, 563 F.3d 148, 154 (5th Cir. 2009).  The "'substantial compliance test . . . considers all communications between an administrator and plan participant to determine whether the information provided was sufficient under the circumstances.'" *Lafleur*, 563 F.3d at 154, *quoting Moore v. LaFayette Life Ins. Co.*, 458 F.3d 416, 436 (6th Cir. 2006).  "Substantial compliance requires 'meaningful dialogue' between the beneficiary and administrator." *Lafleur*, 563 F.3d at 154, *citing Wade v. Hewlett-Packard Dev. Co. LP Short Term Disability Plan*, 493 F.3d 533, 540 (5th Cir. 2007)(where the plan participant or beneficiary examines all communications at all levels between himself and the administrator, the communications as a whole, especially at the administrator's level, constitute a meaningful dialogue between the beneficiary and the administrator despite technical violations; as long as meaningful dialogue exists, there is substantial compliance).  Those communications may include oral exchanges.  *Id., citing White v. Aetna Life Ins. Co.*, 210 F.3d 412, 417 (D.C. Cir. 2000).  The purpose of requiring a review of the particular grounds for a denial is "'to encourag[e] the parties to make a serious effort to resolve their dispute at the administrator's level before filing

suit in district court.'"  *Cooper*, 592 F.3d at 655, *quoting Robinson*, 443 F.3d at 393.

Like the majority of federal courts of appeal, the Fifth Circuit has held that the doctrine of equitable estoppel, as a cognizable legal theory, applies to ERISA claims. *Mello v. Sara Lee Corp.*, 431 F.3d 440, 444-45 & n.4 (5th Cir. 2005).  To prevail on an ERISA-estoppel claim, a plaintiff must prove (1) a material misrepresentation; (2) reasonable and detrimental reliance upon that representation; and (3) extraordinary circumstances.  *Id., citing McCall v. Burlington Northern/Santa Fe Co.*, 237 F.3d 506, 513 (5th Cir. 2000), *cert. denied*, 534 U.S. 822 (2001), and *Weir v. Fed. Asset Disposition Ass'n*, 123 F.3d 281, 290 (5th Cir. 1997). The alleged misrepresentation can be made in writing in informal documents such as benefit statements or pamphlets if they are consistent with the terms of the plan, but not orally because ERISA, 29 U.S.C. § 1102(a)(1), mandates that "every employee benefit plan shall be established and maintained pursuant to a written instrument." *Id.* at 445, 446.[4]  "'[A] misrepresentation is

---

[4] The *Mello* panel quoted from *Cefalu v. B.F. Goodrich Co.*, 871 F.2d 1290, 1296 (5th Cir. 1989), to explain the purpose of the writing requirement:

> "The policy behind the 'written instrument' clause in ERISA is to prevent collusive or fraudulent side agreements between employers and employees.  But for the 'written instrument' clause, employees could discriminate in favor of certain plan participants to the detriment of others.  In addition, the writing requirement gives the plan's participants and administrators a clear

material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision.'" *Id.* at 445, *quoting Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 237 (3d Cir. 1994), *in turn quoting Fischer v. Philadelphia Elec. Co.*, 994 F.2d 130, 135 (3d Cir. 1993). A plaintiff can satisfy the element of material misrepresentation if the employer misrepresented any pertinent information. *Id.* The plaintiff's reliance on the misrepresentation must be both reasonable and detrimental. *Id.* Where the plan is clear and unambiguous, plaintiff cannot reasonably rely on an informal

---

> understanding of their rights and obligations. Employees who rely on a written benefit plan should not have their benefits eroded by oral modifications to the benefit plan. Furthermore, the writing requirement protects the plan's actuarial soundness by preventing plan administrators from contracting to pay benefits to persons not entitled to such under the express terms of the plan. The statutory language of § 1102(a)(1) is clear and concise and must be enforced as written. To hold otherwise would not only thwart congressional purpose and intent, but would afford less protection to employees and their beneficiaries."

431 F.3d at 446. *See also id.* at 447, *quoting Sprague v. GMC*, 133 F.3d 388, 404 (6th Cir. 1998)(a "party's reliance can seldom, if ever, be reasonable or justifiable if it is inconsistent with the clear and unambiguous terms of plan documents available to or furnished to the party"; allowing "estoppel to override the clear terms of plan documents would be to enforce something other than the plan documents themselves. That would not be consistent with ERISA."). *See also id., citing In re Unisys Corp. Retiree Medical Benefit "ERISA" Litig.*, 58 F.3d 896, 902 (3d Cir. 1995)("ERISA's framework ensures that employee benefit plans be governed by written documents and summary plan descriptions, which are the statutorily established means of informing participants and beneficiaries of the terms of their plan and its benefits"; an ERISA plan cannot be modified or superseded by extrinsic evidence).

statement that differs from the terms of the plan because it would mean that the informal statement amended or modified the terms of the plan, contrary to ERISA's policy against informal modifications of plan terms.   The *Mello* panel opined, "Because our decisions require that any detrimental reliance on plan language also be 'reasonable,' our finding that the [terms of the Plan] are unambiguous undercuts the reasonableness of any detrimental reliance . . . ."   *Id.* at 447.   *See also High v. E-Systems, Inc.*, 459 F.3d 573, 579-80 (5th Cir. 2006).   "Extraordinary circumstances" have not been defined by the Fifth Circuit.   While the district court below in *Mello* found that "extraordinary circumstances" existed because the plan participant's employer, through written benefit statements and officers' oral statements, repeatedly assured Mello over a six-year period that he was entitled to the higher amount of benefits it had been paying him, the appellate court determined that Mello's reliance on informal benefit statements and oral representations that were contrary to the unambiguous terms of plan was unreasonable; furthermore the panel therefore expressly stated that it did not consider whether the reliance was detrimental or if extraordinary circumstances existed.[5]   431 at 443, 448.   In *High v. E-Systems, Inc.*, the Fifth

---

[5] The panel pointed out that any reliance on the benefit statements was unreasonable because

  the written benefit statements contained a prominent disclaimer and contradicted unambiguous terms of the

Circuit panel found that there were no extraordinary circumstances where Defendants for six years mistakenly sent the plaintiff a monthly disability check in the amount of $1,200 instead of the $50 per month to which he was entitled under the plan.  It concluded that simply failing to live up to written or oral assurances does not constitute "extraordinary circumstances."  *Id.*, 459 F.3d at 580, *citing Burstein v. Retirement Account Plan for Employees of Allegheny Health Educ. and Research Foundation*, 334 F.3d 365, 383 (3d Cir. 2003).  In *Burstein*, the Third Circuit concluded that "extraordinary circumstances" in the test to see whether equitable estoppel applies "'generally involves acts of bad faith on the part of the employer, attempts to actively conceal a significant change in the plan, or commission of fraud.'"  *Id., quoting Jordan v. Federal Express Corp.*, 116 F.3d 1005, 1011 (3d Cir. 1997).  The Fifth Circuit also cited *Gridley v. Cleveland Pneumatic Co.*, 924 F.2d 1310, 1319 (3d Cir. 1991), in which a disabled employee while in the hospital increased his life insurance coverage under a plan with the express requirement that the employee return to active, full-time work to trigger the policy.  Although he never was given

_____

ERISA plan document.  The pension estimate stated that "[e]very effort has been made to ensure the accuracy of the information reported; however, future changes in Plan provisions or law, or your pay or service cannot be foreseen.  Therefore, the actual benefit paid to you will be determined by the Plan provisions . . . . The benefits shown here are estimates for illustrative purposes only. The Plan documents will govern the determination of any benefits you are eligible to receive.

a copy of the summary plan description, he was given an insurance certificate that stated the active work requirement and a brochure that did not mention it. When the employee failed to return to work, the insurer refused to pay the increased benefits even though the insurer had taken more from his salary to cover the higher premiums. The Third Circuit held that these circumstances were not extraordinary and thus estoppel did not apply. *Id.* at 1319-20, 1320 n.10. *See Khan v. American International Group, Inc.*, 654 F. Supp. 2d 617, 629-30 (S.D. Tex. 2009)(discussing the above cases).

In *Chako v. Sabre, Inc,*, 473 F.3d 604, 609 (5th Cir. 2006), the plaintiff contended that inequitable conduct, i.e., breaches of the Defendants' fiduciary duties, barred them from denying him severance benefits under their general severance plan in violation of 29 U.S.C. § 1132(a)(1)(B). Noting that the statutory provision allows a plan participant or beneficiary "to recover benefits due him *under the terms of the plan*, to enforce his rights *under the terms of the plan*, or to clarify his rights to future benefits *under the terms of the plan*," the Fifth Circuit concluded that his claim was not cognizable under ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). *Id.* (emphasis added by the Fifth Circuit panel)("Chako's argument--that he is entitled to benefits not because they are due to him under the terms of the [general severance plan] but rather because Appellees engaged in 'inequitable conduct' and breached their fiduciary duties--is

-17-

simply not cognizable under ERISA § 502(a)(1)(B)."). *In accord, Khan*, 654 F. Supp. 2d at 628.

## II. Factual Allegations

According to the governing pleading, Plaintiff's First Amended Complaint (#25), Defendants NEBCO and CBCA Administrators, Inc. ("CBCA") are insurance administrators, which, with LINA, acted as agents, joint venturers, Partners, Employees, and/or subsidiaries of CIGNA.  CIGNA Group Insurance ("CIGNA") issued the Policy in dispute, which was insured by LINA, to Clifford Alder.  The Policy was initially administered by CBCA, but after the policy administration division of CBCA was acquired by NEBCO, NEBCO became the Administrator of the Policy.

Clifford L. Alder, a pilot for Continental Airlines, was diagnosed with colon cancer in 2003.  Alder took leave from his job and was placed on disability in June of 2005.

Sanborn-Alder claims that before his diagnosis, Alder had two life insurance policies with LINA:  (1) a Basic Life policy and (2) a Personal Accident Policy.  After he took leave, because he would not be flying for an extended period of time, he decided to convert his Personal Accident Policy to Voluntary Life Insurance.  In June 2005 he submitted to Defendants an Application for Continuation of Insurance, indicating that he wanted to continue voluntary coverage and to continue the amount in force under the Accident Policy at that time ($400,000.00).  Defendants approved the application and

issued him Group Term Life Insurance Policy No. FLM-51224, with certificate number FTLX00087007, effective June 1, 2005, with ported group term life benefits of $400,000.00.  Under the new policy, Alder's premiums rose substantially from approximately $20.00 per month to approximately $800.00 per quarter.  After paying premiums for a year, Alder chose to let lapse his Basic Life policy (the "Previous Policy") with coverage of approximately $180,000.00 because he relied on the fact that his increased coverage through the new Group Term Policy was effective and would adequately provide for his wife if something happened to him. Using community funds, the Alders paid the higher premiums timely for over two and a half years from June 2005 to January 2008. Alder died of cancer on September 28, 2007.

Sanborn-Alder submitted a claim to LINA for proceeds of the Policy a few months later.  On February 25, 2008, LINA sent her a letter stating that her claim had been sent to the Home Office for review of an "eligibility issue."  LINA sent her another letter on March 17, 2008 stating that LINA had to "review the information to determine [Alder's] eligibility for coverage," even though it was three years after the policy had been submitted, approved, and issued and all increased premiums had been timely paid by Alder and Plaintiff and had been accepted by LINA.

Finally, on May 12, 2008 LINA sent Sanborn-Alder a letter stating that it had determined that the life insurance benefits

were not payable, due to an error by Defendants.   #25, Ex. A.

Specifically LINA representative Dan Shustock wrote,

> Communication between our office and NEBCO indicates that
> Mr. Alder was issued ported coverage for $400,000
> Supplemental Life Insurance coverage in error.   The
> coverage that he was allowed to port was the Personal
> Accident Insurance through American Home Assurance
> Company.[6]

In a letter dated July 1, 2008, Ex. B to #25, Technical Specialist

Renee Worst wrote to Sanborn-Alder's attorney,

> As a result of this application NEBCO issued Mr. Alder a
> Schedule of Group Life Insurance under the Trustee of the
> National Consumer Insurance Trust policy number FLM-

---

[6] This paragraph continues, "Mr. Alder did not have Voluntary
Term Life Insurance with Life Insurance Company of North America."
In the "Summary" portion of his letter, Mr. Shustock
explained, Ex. A to #25,

> Based upon the claim documentation in our file, Clifford
> L. Alder did not have voluntary insurance benefits while
> actively employed by the Continental Airlines. Therefore
> he could not apply for a ported policy with us. Instead,
> Mr. Alder had Personal Accident Insurance coverage for
> $400,000.00 through American Home Assurance Company.
> NEBCO issued Mr. Alder a certificate for voluntary
> insurance benefits in error based on the Personal
> Accident Insurance amount listed on the Health and Group
> Benefits Plan Conversion Notice.
> Since Mr. Alder did not have voluntary life
> insurance benefits through Continental Airlines, he was
> not eligible to port voluntary insurance benefits with
> Life Insurance Company of North America. Therefore, I
> must regretfully deny your claim for voluntary life
> insurance benefits.
> NEBCO has been informed that any premiums paid for
> this policy (#FLM 51224; Certificate # FTLX00087007)
> should be refunded to you.

51224.   This coverage was effective June 1, 2005 for ported group term life benefits of $400,000.[7]

For   Sanborn-Alder's   claim   for   relief   under   Section 502(a)(1)(B)   of   ERISA,   29   U.S.C.   §   1132(a)(1)(B),   as   a "beneficiary"[8] under the plan she seeks to recover benefits due to

---

[7] Taken   out   of   context,   this   section,   describing   Alder's application for Continuation of Insurance for coverage with LINA, may  be  misleading.    The  Court  provides  the  three  paragraphs following it, Ex. B to #25:

> We   contacted   NEBCO   to   obtain   additional   information regarding   Mr.   Alder's   salary   and   coverage   election history.  The purpose of this contact was to document our file regarding Mr. Alder's eligibility for coverage.   It was at this time that NEBCO advised us that Mr. Alder had basic coverage only and that he had not elected Voluntary Group Term Insurance.

> According to the claim file, approximately, June 25, 2005 the Life Insurance Company of North America received an application to continue life insurance from Mr. Alder. He sought to continue the Voluntary Life Insurance that was in force at the same coverage amount.   However, Mr. Alder was not a participant in his employer's Basic Group Term   Life   Insurance   coverage   and   Personal   Accident Insurance coverage.   There is nothing in our file to support the fact that Mr. Alder elected Voluntary Life Insurance benefits while an active employee.   Therefore, he was not covered under the Group Term Voluntary Life Insurance Plan and had no such benefit to continue.

> The documentation in our file supports the fact that Mr. Alder did not have Voluntary Group Term Life Insurance coverage under Continental Airline policy while active. Since there was no Voluntary Group Term Life Insurance available for port when he became disabled and requested to continue coverage Mr. Alder would not be eligible for coverage under policy FLM 51224.   Therefore, benefits are not payable at this time under the provisions of policy FLM 51224.

[8] A "beneficiary" is defined by the statute as "a person designated by a participant, or by the terms of an employee benefit

-21-

her under the terms of the plan and LINA's Group Term Life Insurance Policy, as well as attorney's fees and costs under 29 U.S.C. § 1132(g).

### III.   LINA's Motion for Summary Judgment (#69)

LINA attaches to its motion LINA's administrative record for Plaintiff's claims for benefits under the Continental Plan as Exhibit B-1 and cites it as "Alder/LINA 1-64"; NEBCO's administrative record of Plaintiff's claim for benefits as Exhibit C and cites it as "NEBCO 1-34"; the policy in dispute is Exhibit A-1; and the summary plan description is Exhibit B-2 and cites it as Alder/LINA 85-257.

LINA contends that it is entitled to summary judgment because, first, it did not abuse its discretion in denying Plaintiff's claim for benefits under the facts here and under the terms of the ERISA employee benefit plan that Clifford Alder's employer, Continental Airlines, maintained for qualified employees.  Because Clifford Alder never applied for nor paid for voluntary life benefits insurance while he was actively employed at Continental Airlines, he did not have any voluntary life coverage available for "port" or conversion under the LINA Policy No. FLX 051224 for basic and supplemental life insurance benefits available under Continental's Plan.  LINA issued the policy under which Plaintiff claims she is

_____

plan, who is or may become entitled to a benefit thereunder."  29 U.S.C. § 1002(8).

entitled to recover, but LINA insists that CBCA Administrators, the administrator for ported and/or converted benefits, erroneously issued a certificate instead of porting his personal accident insurance under a separate insurance policy issued by AIG.

Second, LINA insists that Plaintiff cannot recover from LINA under any ERISA or federal common law theory of recovery.

Finally, Fifth Circuit precedent mandates that Plaintiff's only relief is repayment of premiums, which has already occurred. *Amschwand v. Spherion Corp.*, 505 F.3d 342, 343-44, 348 (5th Cir, 2007)(rejecting argument that mere payment of premiums can create coverage where none exists; to the extent that the defendant breached a duty to Amschwand or her husband in incorrectly confirming that he was eligible for benefits under, "the appropriate equitable remedy for this breach was the disgorgement of [defendant's] ill gotten profits from such representations, i.e., refund of policy premiums" under 29 U.S.C. § 1132(a)(3)), *cert. denied*, 128 S. Ct. 2995 (2008).

LINA explains that when Alder was an employee of Continental Airlines, and therefore a beneficiary of the Continental Plan regulated by ERISA, he was automatically enrolled in Group Life Insurance Policy No. FLX-051224 issued by LINA (Ex. A-1 to #69), which provided him with $158,000 in basic life insurance benefits. He also had the option to apply and pay for voluntary life insurance coverage under the LINA policy, which designated CIGNA as

the claims administrator for any life insurance benefits, but Alder never exercised that option.  Alder/LINA 34.  Therefore he did not have the ability to port or transfer any voluntary life benefits under the LINA policy.

The Continental Plan also gave its participants the option to apply for personal accident insurance benefits insured by AIG Life Insurance Company ("AIG") under Policy No. PAI 8049278 (the "AIG" policy), for which AIG was designated by the Continental Plan as the claims administrator.  Alder/LINA 95.  Alder did exercise his option to secure $400,000.00 in personal accident benefits before leaving his employment with Continental.  Alder/LINA 62.

On June 2, 2005, Hewitt & Associates ("Hewitt"), an employee benefits contractor of Continental Airlines, sent Alder a letter when he left his employment stating that he had an option to continue his personal accident coverage under the AIG Policy and directing him to complete and return the enclosed application "to the insurance company at the address printed on the application." Alder/LINA 62.  Hewitt erroneously enclosed a CIGNA application for continuance of voluntary life insurance coverage under the LINA policy instead of the AIG application for continuation of insurance available under the AIG policy.  Alder/LINA 61.  The form had LINA's logo and service mark on the top right corner, but the form instructed that it should be returned to CBCA for processing.  *Id.* Alder filled out the form and forwarded it to CBCA.  *Id.*

CBCA, which was the plan administration entity that handled Continental employees' requests for porting or converting benefits under the Continental Plan (Ex. B, p.1), received Alder's application on June 24, 2005 and began processing it.  NEBCO 31-32.[9]  CBCA's customer service employee Lorraine P. Knott registered the application on June 24, 2005 and initialed it to show that she had performed a "pre-screening/eligibility" review that same day.  *Id.*  Nevertheless she did not check any of the pre-screening items listed on a processing form for Alder's application, including "Verified benefit amount" task.  NEBCO 31.  Moreover Knott mistakenly issued a certificate for "ported" life insurance benefits in the amount of $400,000 to Alder on June 27, 2005.  NEBCO 31-32.  She also issued a Schedule of Group Insurance certificate erroneously stating that Alder had $400,000 of benefits as of June 1, 2005.  NEBCO 24.  *Id.*  She forwarded this Schedule to Alder with a letter dated June 27, 2005.  NEBCO 33-34.  CBCA also accepted and processed Alder's premium payments.  NEBCO 18.

NEBCO asserts that it assumed the policy administration services that CBCA had performed around June 2006.  #10 at 4.  Its administrative record reflects that its employees spoke with Alder in August 3, 2006.  NEBCO 1-2.  One entry represents that a "tburnett" "[a]dvised the insured that as long as he was off from

---

[9] The reason the document is in NEBCO's administrative record is because NEBCO succeeded CBCA as administrator, as will be discussed.

-25-

Continental this policy would stay in effect [until] he went back
to work as long as he pays premiums." NEBCO 2.  A second entry
indicates that after Continental sent him an application to
continue his basic coverage that he was entitled to port or convert
under the LINA policy, a "GWilkins" "advised to the insured that
the conversion application that he has received is from Continental
Airlines regarding his basic coverage and does not affect the
continuation coverage he has active here." NEBCO 1.  After Alder
called NEBCO to question this matter, NEBCO's administrative record
does not indicate that NEBCO investigated the matter.  Afterwards,
Alder permitted his basic life coverage to lapse.  #25, ¶ 14.

Alder died on September 28, 2007.  The administrative record
indicates that Plaintiff called NEBCO on October 19, 2007 to notify
NEBCO of Alder's death.  NEBCO 1.  On November 20, 2007 NEBCO
Service Administrator Faye Johnson forwarded a claim form to
Plaintiff.  NEBCO 28-29.  Plaintiff's financial planner forwarded
the completed application with a copy of Alder's death certificate
to NEBCO on December 20, 2007.  NEBCO 23.  NEBCO Service
Administrator Greg Wilkins acknowledged receipt of these documents
in a letter dated December 28, 2007 and represented that the claim
had been forwarded to LINA for review.  NEBCO 15.

The administrative record shows that LINA did not receive
Plaintiff's claim for "ported group term voluntary life benefits"
until January 10, 2008.  Alder/LINA 1, 58.  There is no entry in

-26-

LINA's administrative record showing that LINA reviewed, processed, or issued the Schedule of Group Insurance certificate that CBCA had mailed to Plaintiff in June 2005.  On January 17, 2008 LINA's Life Claim Specialist forwarded Plaintiff a letter acknowledging receipt of her claim and stating he would be reviewing it, as detailed in Plaintiff's complaint.  Alder/LINA 53.  LINA Life Claim Specialist Gladys Shelly assisted.  Alder/LINA 45.  When Shelly found records showing that Alder's basic life insurance coverage under the LINA policy lapsed in June 2005, she emailed Hewitt representative Sharla Saenz and asked her to send computer screen prints showing Alder's levels of coverage for 2002 through 2005 so Shelly to determine whether Alder "ported his Voluntary coverage."  *Id.* Saenz sent the requested screen prints on February 6, 2008. Alder/LINA 34-44. The screen prints demonstrated that Alder has basic life insurance benefits totaling $158,000 as of June 31, 2005 and that he had never applied for or had voluntary life benefits under the LINA policy while he was a Continental employee.  *Id.*  On February 20, 2008 Saenz called Shustock to confirm that Alder did not have $400,000 of voluntary life insurance benefits under LINA policy No. FLM 51224 and thus "the converted life which took place in June 2005 could not involve this product."  Alder/LINA 32.  That same day Shustock left Wilkins a message about the documentation showing that Alder "did not have $400K in life to port," and that

that sum appeared to be Alder's personal accident benefits under the AIG policy.  Alder/LINA 31.

In an email dated February 20, 2008 Saenz further confirmed that Alder did not have supplemental life insurance with LINA, but only basic life insurance.  Alder/LINA 27.  She also stated that the $400,000 of benefits Plaintiff had claimed was "separate personal accident insurance through AIG."  *Id*.  On February 22, 2008 Wilkins sent Shustock an email stating, "Upon reviewing the file of Clifford L. Alder, we discovered the $400,000 in voluntary term coverage was issued in error based on the Personal Accident Insurance employer verification letter we submitted.  Alder/LINA 24; NEBCO 112.  On that same date, Wilkins forwarded his email to LINA employee Teresa Emens, stating,

> I wanted to make you aware of this situation.  An error was made at issue on the policy of the insured named above.  The Hewitt letter that verified the Personal Accident insurance was used for verification of coverage.  Please let me know if you want to see additional information regarding his policy.

NEBCO 10.

On March 17, 2008, Shustock sent a status letter to Plaintiff to inform her that her claim was still under review because the $400,000 in claimed benefits had apparently been converted from a personal accident policy issued by another entity rather than the life insurance policy issued by LINA.  Alder/LINA 21.  On May 2, 2008 Shustock sent an email to Wilkins asking him to confirm whether NEBCO had ever sent a revised certificate or any other

-28-

correspondence to Alder notifying him that he had no voluntary coverage under the LINA policy.  Alder/LINA 18; NEBCO 7.  On May 6, 2008 Wilkins email confirmed, "Nothing was sent by us [NEBCO] notifying them that there was no Voluntary coverage eligible for port."  *Id.*

In a letter dated May 12, 2008 Shustock informed Plaintiff that her claim for benefits had been denied.  Alder/LINA 13-16. The letter included the LINA policy definitions for "Portability Options" and "Former Employee Benefits," what LINA reviewed in reaching its decision to deny Plaintiff's claim, and explained that Alder had failed to apply for nor had he received any voluntary life insurance benefits while he was employed by Continental.  *Id.* at 14-15.  It also explained that NEBCO, the administrator for the conversion and ported insurance benefits, "issued Mr. Alder a certificate for voluntary insurance benefits in error based on the Personal Accident Insurance amount" listed for the AIG Policy.  *Id.* The letter informed Plaintiff that she had a right to appeal her claim and the LINA had directed NEBCO to refund any premiums paid on the converted claim.  *Id.*; NEBCO 6.  On May 21, 2008 NEBCO sent Plaintiff a check of $5942.41, representing all premiums that Alder had paid on the policy.

Plaintiff appealed the denial in a letter from her attorney, dated June 6, 2008, but without any supporting documentation. Alder/LINA 9-10, 7.  A letter dated June 24, 2008 from LINA

-29-

acknowledged receipt of the appeal, but in a letter dated July 1, 2008 LINA sustained its denial of her claim. *Id.* at 3-6. A July 1, 2008 letter again explained that NEBCO had issued the Schedule of Group Life Insurance in error, as Alder had never applied for nor received any voluntary life coverage under the LINA policy before he left his employment with Continental. *Id.* It also advised Plaintiff that she had exhausted administrative appeals and had the right to being legal action under ERISA. *Id.* She filed this action against LINA, NEBCO, and CBCA on February 9, 2009. #1, Ex. A.

LINA maintains that in the summary plan description and the policy LINA was implicitly given the discretion to determine eligibility for benefits. LINA points out that the summary plan description names it as claims administrator for voluntary and basic life insurance benefits. Moreover the LINA policy requires participants to provide notice of their claim and "[w]ritten proof of loss, or proof by any other electronic/telephonic means authorized to the Insurance Company . . . to the Insurance Company." Alder/LINA 95; #1, Ex. B-1, p. 24. The policy also requires participants to submit "due proof" to LINA to obtain waiver of premium benefits and states that participants will not be eligible for terminal illness benefits unless they have been "determined by the Insurance Company to be Terminally Ill." #1, Ex. B-1, pp. 20, 21. *Magee v. LINA*, 261 F. Supp. 2d 738, 749 (S.D.

Tex. 2003)("Satisfactory proof language grants LINA discretion under the Plan to make benefits determinations"). Furthermore, even if the plan did not expressly give the claims administrator discretionary authority to make factional determinations, the abuse of discretion would still apply to the court's review of those factual decisions. *Dutka v. AIG Life Ins. Co.*, 573 F.3d 210, 212 (5th Cir. 2009)(construing *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)("with or without a discretionary clause, a district court rejects an administrator's factual determinations in the course of benefits review based only upon the showing of an abuse of discretion"), *cert. denied*, 130 S. Ct. 1686 (2010). LINA and NEBCO have produced their complete administrative records, and Plaintiff has not objected to their completeness. LINA contends there is no evidence in the administrative record showing that LINA abused its discretion in making the benefits determination now challenged. It is error for the court to consider any evidence outside the administrative record. *Estate of Bratton v. Nat'l Union Fire Ins. Co.*, 215 F.3d 516, 521 (5th Cir. 2000). LINA insists it did not abuse its discretion in determining that Alder did not have any voluntary life coverage available for "port" or conversion under the LINA policy.

LINA asserts that LINA and NEBCO's administrative records show that LINA relied on substantial evidence in making the factual determination that the benefits Plaintiff attempted to "port" were

not basic life benefits under the LINA policy, but personal accident benefits under the AIG policy, for which AIG was the insurer and claim administrator.  The letter forwarded to Alder by Hewitt regarding his ability to continue insurance specifically stated that he had an option to continue his personal accident coverage under the AIG policy.  Alder/LINA 62.  Alder then completed the form indicating he wanted to continue the voluntary coverage for the amount currently in force.  Alder/LINA 61.  The claims administration record maintained by LINA also reflects that Alder never applied for or had any voluntary life insurance benefits under the LINA policy and only had "voluntary" coverage through the $400,000 in personal accident benefits he elected under the AIG policy.  Alder/LINA 34, 62.  After Plaintiff submitted her claim for benefits under the LINA policy, Lina contacted Hewitt and NEBCO to investigate the claim.  Hewitt's Sharla Saenz provided more confirmation in an email dated February 20, 2008 that Alder did not have supplemental life insurance with LINA, but only basic life insurance, and that the $400,000 of benefits that Plaintiff claimed was a "separate personal accident insurance through AIG." Alder/Lina 27.  NEBCO's administrator Greg Wilkins sent LINA's Dan Shustock an email on February 22, 2008 stating, "Upon reviewing the file of Clifford L. Alder, we discovered the $400,000 in voluntary term coverage was issued in error based on the Personal Accident Insurance employer verification letter we submitted."  Alder/LINA

24; NEBCO 12.  Subsequently LINA sent Plaintiff  letter explaining the error and denying Plaintiff's claims for benefits under the LINA policy.  Alder/Lina 3-6, 13-16.

In summary LINA insists it properly interpreted the language of the Plan in concluding that it had no duty to administer personal accident benefits insured under the AIG policy, that it relied on substantial evidence to conclude that the benefits Alder attempted to "port" were personal accident benefits available under the AIG policy, and that Alder had not exercised the option to obtain any voluntary life insurance benefits that would have been available to "port" under the LINA policy.  Thus there was no abuse of discretion in LINA's denial of Plaintiff's claim for benefits under the  LINA policy and Plaintiff's claim against it under § 1132(a)(1)(B) of ERISA should be dismissed.

Furthermore argues LINA, Plaintiff is not entitled to benefits under the plan and policy pursuant to any other ERISA theory nor under federal common law.  Claims for entitlement to benefits on the grounds that the administrator engaged in inequitable conduct are "simply not cognizable under § 1132(a)(1)(B)."  *Khan*, 654 F. Supp. 2d at 628, *citing Chacko*, 473 F.3d at 609.  Nor can Plaintiff prevail on an ERISA-estoppel claim because simple errors and omissions, without an accompanying intent to deceive, are not material misrepresentations that give rise to such a claim.  *Khan*, 654 F. Supp. 2d at 629.  "Extraordinary circumstances" required for

such a claim generally require proof of acts of bad faith" by the employer, "attempts to actively conceal a significant change in the plan, or commission of fraud." *Id., citing High v. E-Systems, Inc.*, 459 F.3d at 580 n.3. Here NEBCO's administrative record establishes that CBCA employees merely used the wrong form when issuing the "ported" policy, while LINA's administrative record demonstrates that it did not learn of this mistake until after Alder died and his wife made a claim for benefits. NEBCO 10; Alder/LINA 31-32.

Nor did Alder's payment of premiums create coverage under the plan where coverage did not exist under the terms of the plan or the policy. *Amschwand*, 505 F.3d at 343-44; *Khan*, 654 F. Supp. 2d at 630-31.

Finally, Plaintiff's sole remedy is reimbursement of premiums, and that relief has been provided. *Amschwand*, 505 F.3d at 342-44, 348; NEBCO 3-4.

## A. *Plaintiff's Response (#71)*

Plaintiff argues that a benefit claim under ERISA is equivalent to a breach of contract claim; for breach of contract a plaintiff must establish (1) a valid contract; (2) performance or tendered performance by plaintiff; (3) breach of contract by defendant; and (4) damage to plaintiff as a result. *McLaughlin, Inc. v. Northstar Drilling Techs., Inc.*, 138 S.W. 3d 24, 27 (Tex. App.--San Antonio 2004, no pet. h.). Generally a mistake by one

party to an agreement is not grounds for breaching such contract. *Cigna Ins. Co. v. Rubalcada*, 960 S.W. 2d 408, 412 (Tex. App.--Houston [1st Dist.] 1998, no pet.).    Plaintiff insists that LINA has not provided any evidence that, despite an error in issuing the voluntary coverage to Alder, the plan was invalid or that Alder failed to abide by the terms of the agreement.  She maintains that by denying benefits due to Alder on the grounds that LINA mistakenly agreed to the contract, LINA breached its discretion and summary judgment in its favor is improper.

The Court will not describe Plaintiff's reliance on breach of contract under Texas state law because there is no dispute that the plan in dispute is governed by ERISA and therefore a state-law breach of contract cause of action is preempted.  ERISA § 504, 29 U.S.C. § 1144(a).    "[A]ny state-law cause of action that duplicates, supplements, or supplants ERISA civil enforcement remed[ies] conflicts with the clear congressional intent to make ERISA remed[ies] exclusive and is therefore preempted." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 2009 (2004).  Plaintiff analogizes the ERISA claim here to one under state law for breach of contract, but the state-law claim is preempted because it duplicates the ERISA cause of action for benefits under 29 U.S.C. § 1132(a)(1)(B). *Bank of Louisiana v. Aetna U.S. Healthcare, Inc.*, 468 F.3d 237, 242 (5th Cir, 2000); *Dowden v. Blue Cross & Blue Shield of Texas, Inc.*, 126 F.3d 641, 642 (5th Cir. 1997)("If a state

law claim addresses an area of exclusive federal concern such as the right to receive benefits under the terms of an ERISA plan, then the claim falls in the province of the federal courts" and the state law cause of action is preempted by ERISA.). The Court has summarized the applicable law under ERISA *supra* and agrees with LINA's presentation of it.

Plaintiff contends that LINA ignores the relevant plan language and makes a flawed interpretation of the plan, while failing to claim that Plaintiff is interpreting the plan incorrectly. LINA focuses on documents outside of the unambiguous terms of the plan, apparently the administrative records. Moreover LINA admits to the facts recited in LINA's motion, including that CBCA received Alder's application and conducted a pre-screening/eligibility review, and that LINA issued him a certificate for life insurance benefits totaling $400,000 on June 27, 2005. There is no allegation that Alder failed to abide by the terms of the plan. LINA admits Defendants made a mistake--not a valid reason to deny coverage. Plaintiff argues that LINA's evidence about prior coverage is irrelevant because LINA concedes that Alder was issued coverage. While Hewitt's letter of June 2, 2005 (Alder/LINA 62) shows Alder was seeking to "port" accident coverage, it also contains a summary of Alder's coverage with a bullet point listing to "Supplemental/Voluntary Coverage" in the amount of $400,000. LINA also relies on the application for

-36-

coverage attached to the first letter, which LINA claims was "incorrectly enclosed," but LINA submits no evidence to show that it was incorrectly enclosed.  The bold headline at the top of the page reads, "Application for Continuation of Insurance," and does not reference "porting" or "transferring."  There is no substantial evidence that Alder was not merely trying to apply for and/or continue voluntary coverage instead of accident coverage.[10]  Since he would not be flying any more, the former choice makes sense.

Plaintiff also argues that ERISA estoppel applies here because Alder was covered by the plan, Alder relied on the misrepresentation that he was covered, and but for the extraordinary circumstance of the insurance company making a mistake, he should not have been issued coverage.  LINA claims "simple errors and omissions, without an accompanying intent to deceive, are not material misrepresentations."  *Khan* 654 F. Supp. 2d at 628.  Plaintiff argues that *Khan* focused on the issue of how long coverage lasted after someone's employment with the company ended and argued that defendant had a duty to provide him with all available information to obtain benefits under the plan.  *Id.* at 629.  The *Khan* court did not make the broad ruling asserted by LINA, but only observed that Khan did not cite any cases that held

---

[10] The Court observes that LINA is not required to point out that there is no substantial evidence supporting what Alder did or did not want or intend, but only that there is no genuine issue of material fact regarding the substantial evidence supporting LINA's decision to deny benefits.

that omitting disclosures "particularly without an accompanying allegation that the omission was made with intent to deceive" is a material misrepresentation.  *Id.* at 629.   It also stated that courts have "consistently rejected estoppel claims based on simple reporting errors or disclosure violations, such as an omission in the disclosure documents."  *Id.*  Plaintiff argues that unlike in *Khan*, here there is no reporting error or disclosure violation; instead the disagreement is about (1) clear plan terms and a material misrepresentation that Alder was covered under the policy, (2) Alder's clear, reasonable and detrimental reliance on that representation which Alder could not have known or be held to have known that LINA erroneously made in issuing the coverage, and (3) Alder's reliance on it, not only in expecting the benefits to pay out, but in allowing a his basic life policy to lapse.  It is LINA, not Plaintiff, who is seeking to avoid the clear terms of the policy; it would be "extraordinary" if LINA were allowed to succeed.  Plaintiff insists that LINA is bound by the terms of the current agreement (Group Term Life insurance policy) with Alder, regardless of any earlier plan it had with him.  In *Amschwand* the employer changed its original plan when it changed providers, and the new policy required the insured to return to work for one full day to obtain coverage.  505 F.3d at 343.  Amschwand was never informed of the change and never returned to work before he died.  Although the insurance company assured him twice that he was

covered and never told him he had to go back to work for one day, the court held that he was bound by the clear language of the new policy. *Id.* Plaintiff asserts that no one is entitled to estoppel based on some extraneous documents involving prior plans. Once LINA issued coverage to Alder, LINA was bound by the terms of that policy, could not rely on documents outside of the plan and policy, and is not entitled to summary judgment.

## B. *Court's Decision*

As noted a claim for benefits under § 1332(a)(1)(B) is not the same as a state law breach of contract cause of action, and the former preempts the latter. Moreover LINA correctly construes and applies the law under ERISA.

Furthermore, the Court must determine whether LINA abused its discretion in denying Plaintiff's claims based on the administrative records, which are not "extraneous" documents. "[T]he administrative record consists of relevant information made available to the administrator prior to the complainant's filing of a lawsuit and in a manner that gives the administrator a fair opportunity to consider it." *Vega v. National Life Insurance Services, Inc.*, 188 F.3d 287, 300 (5th Cir. 1999)(*en banc*), abrogated in part on other grounds, *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008). "In ERISA cases, courts generally cannot consider evidence outside the administrative record." *Anderson v. Cytec Industries, Inc.*, 619 F.3d 505, 515 (5th Cir.

2010).  The plan administrator must identify the evidence in the administrative record and the claimant must be given a reasonable opportunity to challenge the record if it believes the record is incomplete," *Estate of Bratton v. Nat' Union Fire Ins. Co. of Pittsburgh, PA*, 215 F.3d 516, 522 (5th Cir. 2000).  Sanborn-Alder has not complained that LINA's and NEBCO's records are incomplete.  "Once the administrative record has been determined, the district court may not stray from it but for certain limited exceptions, such as the admission of evidence related to how an administrator has interpreted terms of the plan in other instances, and evidence, including expert opinion, that assists the district court in understanding the medical terminology or practice related to a claim." *Bratton*, 215 F.3d at 522.  Moreover the documents in the records are not extraneous despite Plaintiff's incorrect assertion that only the Group Term Life Insurance policy is relevant here.

LINA has not abused its discretion in denying Plaintiff's claim.  LINA has shown through far more than substantial evidence that under the terms of Continental's written ERISA plan and policies, Alder did not qualify for coverage under LINA's Group Term Life policy.  Any potential conflict in the dual role LINA played as insurer and administrator of the plan was minimal, as the evidence was objective and the error in issuing the life insurance to Alder was contrary to the express terms of the clear and unambiguous plan.  Plaintiff is not entitled to benefits that are

not due her or her husband under the terms of the written plan just because Defendants erred or engaged in inequitable conduct in wrongly issuing the life insurance to which Alder was not entitled and leading him to believe he had $400,000 life insurance coverage. *Chako*, 473 F.3d at 609; *Khan*, 654 F. Supp. 2d at 628.

Nor does equitable estoppel apply here. Alder and his wife's reliance on the Group Term Life Insurance certificate and Defendants' assurances that he was covered by the voluntary life insurance policy was not reasonable because such "statements" were contrary to the terms of the plan and policy. *See Mello*, 431 F.3d at 444-45 & n.4; *High v. E-Systems, Inc.*, 459 F.3d at 580, *citing Burstein*, 334 F.3d at 383. Moreover Plaintiff has not submitted any evidence that LINA or Continental acted in bad faith, concealed plan changes or committed fraud to prove "extraordinary circumstances." *High v. E-Systems*, 459 F.3d at 580.

LINA has shown that it has met all the procedural requirements involved in reviewing Plaintiff's claim for life insurance benefits and explained the steps it undertook in and its reasons for deciding to deny that claim. It has identified all communications between LINA and Alder and Sanborn-Alder.

Plaintiff's argument about *Amschwand* twists the holding of the case. She claims that *Amschwand* supports her argument that LINA is bound by its issuance of insurance to Alder under the Group Term Life insurance Plan into which he allegedly ported his accident

insurance policy and for which he has paid premiums.  "Unless an employer contractually cedes its freedom, it is generally free under ERISA, for any reason at any time, to adopt, modify or terminate its welfare plan." *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 373 (5th Cir. 2008), *citing Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995); *Kirschbaum v. Reliant Energy Inc.*,526 F.3d 243, 251 (5th Cir. 2008).  If the employer changes ERISA plans, the plan in effect at the time a claim for benefits accrues is the controlling plan. *Vercher v. Alexander & Alexander, Inc.,* 379 F.3d 222, 226 n.6 (5th Cir. 2004).  That is what happened in *Amschwand*.  In the instant case, there was no change of plans; Alder was inadvertently and erroneously placed in the wrong plan and policy.  The clear and unambiguous language of the LINA plan makes clear the he was not qualified to be covered by the LINA Group Term Insurance policy because during his employment with Continental he never purchased the Voluntary Term Life Insurance with LINA that could be ported into LINA's Group Term Life policy.

Furthermore, as LINA has correctly stated, Plaintiff's only relief is repayment of premiums, which has already occurred. *Amschwand*, 505 F.3d at 343-44, 348 (rejecting argument that mere payment of premiums can create coverage where none exists; to the extent that the defendant breached a duty to Amschwand or her husband in incorrectly confirming that he was eligible for benefits under LINA's Group Term Life Insurance, "the appropriate equitable

-42-

remedy for this breach was the disgorgement of [defendant's] ill gotten profits from such representations, i.e., refund of policy premiums" under 29 U.S.C. § 1132(a)(3)). While the result may seem supremely unfair, as Judge Benivades stated in his concurrence in *Amschwand*, 505 F.3d at 348, "The facts as detailed in Judge Jones's opinion scream out for a remedy beyond the simple return of premiums. Regrettably, under existing law, it is not available."

### IV.  NEBCO's Motion For Summary Judgment (#80)

NEBCO also moves for summary judgment on Plaintiff's sole remaining claim under § 1132(a)(1)(B) to review LINA's decision as Plan Administrator to deny benefits to her. NEBCO insists it is not a proper defendant because it is not the Plan,[11] nor Plan administrator,[12] nor sponsor,[13] nor a party with authority to deny benefits under the plan. *Musmeci v. Schwemann Giant Super Markets*, 332 F.3d 339, 349 (5th Cir. 2003)(although not expressly limiting the kinds of defendants in a § 1132(a)(1)(B) claim, holding that an

---

[11] ERISA defines a "plan" in relevant part as "any plan, fund, or program which was heretofore or hereafter established or maintained by an employer or by an employee organization." 29 U.S.C. § 1002(l).

[12] ERISA defines "plan administrator" as "the person specifically so designated by the terms of the instrument under which the plan is operated." 29 U.S.C. §1002(16)(A)(i). The Plan designates CIGNA, a registered trademark of LINA, as the administrator for the Life Policy. Ex. A-1 to LINA's motion for summary judgment.

[13] ERISA defines the "sponsor" as the employer, 29 U.S.C. § 1002(16)(B).

employer was a proper party in a § 1132(a)(1)(B) because it was the plan administrator, the plan sponsor, and the entity that ultimately decided to deny benefits under the plan at issue).  The key factor is the ultimate decision-making authority as to whether the claimant is entitled to benefits under the plan; one who has no discretion to determine eligibility for benefits, or is not the final decision maker, under an ERISA plan is not a proper defendant for a § 1132(a)(1)(B) claim.  *See Carroll v. United of Omaha Life Ins. Co.*, 378 F. Supp. 2d 741, 747 (E.D. La. 2005); *Kinnison v. Humana Health Plan of Texas, Inc.*, 2008 WL 2446054, *10 (S.D. Tex. June 17, 2008); *Pippin v. Broadspire Services, Inc.*, 2006 WL 2588009, *2-3 (W.D. La. 2006).  NEBCO urges that Plaintiff's suit should proceed with the proper parties, i.e., Plaintiff and the Plan Administrator.

Most of the facts have been summarized *supra*.  NEBCO highlights that after CBCA (a registered mark of LINA) was designated by the group term life insurance policy as the Plan Administrator for life insurance benefits under the Plan, effective June 1, 2005, certificate No. FTLX00087007), a year later NEBCO acquired the assets of CBCA and took over some of the administrative responsibilities for the Life Policy on behalf of LINA.  NEBCO insists that the acquisition specifically excluded certain liabilities and obligations of CBCA, including those arising from facts, events or circumstances existing or occurring

-44-

on or before 12:01 a.m., June 1, 2006. NEBCO was never designated as the Plan Administrator under the Life Policy or the Plan. On May 12, 2008 LINA denied Plaintiff's claim for benefits. LINA informed NEBCO of LINA's decision and instructed NEBCO to refund all premiums for the Life Policy. NEBCO did not review the claim or make the decision to deny Plaintiff benefits under the plan; it had no discretion regarding Plaintiff's eligibility for benefits under the Plan. Only LINA, as evidenced by its explanation of its actions in response to Plaintiff's claim, had the discretion to determine eligibility for benefits under the Plan, and it made the decision to deny Plaintiff's claim, as shown by the discovery products and affidavits on file. NEBCO contended that it is not the proper defendant and should be dismissed as a matter of law.

### A. LINA's Response (#83)

The only response to NEBCO's motion for summary judgment was filed by LINA, which argues that if Plaintiff's claim against LINA is not dismissed on the merits, NEBCO should not be dismissed because it is a proper defendant here. LINA insists that NEBCO did administer the Plan at the time that the voluntary life insurance benefit certificate was issued, though not at the time Plaintiff's claim for benefits was denied. There is substantial evidence that NEBCO's employees failed to verify that Alder was entitled to benefits when he called NEBCO to ask about an additional application for continuation or "porting" of benefits he received

after he had already received the Group Term Life insurance certificate. NEBCO does not address the merits of Plaintiff's claim, but only whether it is a proper defendant, and therefore summary judgment should be denied as a matter of law. LINA incorporates and adopts the arguments, legal authorities and evidence that it cited and relied upon in its own motion for summary judgment.

LINA insists that there is substantial authority that claims administration entities can be proper parties to ERISA actions. *Musmeci*, cited by NEBCO, was limited to the facts before it and "did not . . . establish a 'general rule' that the plan was the only proper defendant, or by implication, any 'narrow exception' to such rule." *American Surgical Assistants, Inc. v. Great West Healthcare of Texas, Inc.*, 2010 U.S. Dist. LEXIS 13573, *8 (S.D. Tex. Feb. 17, 2010)(Werlein, J.). The Fifth Circuit has not expressly decided who or what is a proper party to a § 1132(a)(1)(B) claim. Some district courts in the Fifth Circuit have held that a plaintiff can pursue such a claim against a defendant that exerted control over plan administration. *Id.* at *5; *Franklin v. AT&T Corp.*, 2008 U.S. Dist. LEXIS 14174, * 25 (S.D. Tex. Feb. 26, 2008)(Rainey, J.); *Bernstein*, 2006 U.S. Dist. LEXIS 54712, at *25; *Kellebre v. Unum Life Ins, Co. of Am.*, 2006 U.S. Dist. LEXIS 30996, *5 (S.D. Tex. Apr. 20, 2006 (Atlas, J.).

NEBCO does not explain the nature or extent of its administrative duties and thus does not satisfy its initial summary judgment burden of informing the Court of the basis of its belief that there is an absence of a genuine issue of material fact for trial. Instead it submits the affidavits of two NEBCO employees, Vice President Scott M. Purvance and Senior Operations Manager Becky Smith, who testify that "NEBCO took over some of the administrative responsibilities for the life insurance policy issued by LINA to Clifford Alder, issued . . . as part of the employee benefits plan of Continental Airlines." #80-2, ¶ 4 and 80-3, ¶ 3. Neither affiant explains which administrative responsibilities NEBCO was handling on behalf of the plan.

Meanwhile LINA argues that it has submitted evidence showing that NEBCO exercised control over the administration of the Plan and that NEBCO's administration caused or contributed to the claims and causes of action alleged by Plaintiff; its evidence shows that (1) NEBCO's employees confirmed the incorrect coverage when Alder contacted NEBCO about his benefit status before his death; (2) NEBCO employees submitted Plaintiff's claim for benefits to LINA; (3) NEBCO employees helped LINA investigate Plaintiff's claim for benefits; and (4) NEBCO employees issued premium reimbursement checks to Plaintiff after her claim was denied. *See* #10, p.4; NEBCO 1-2; LINA's factual summary supported by its and NEBCO's

administrative records. This evidence raises a fact issue that should prevent summary dismissal of NEBCO from this action.

**B.  *NEBCO's Reply (#84)***

Emphasizing that Plaintiff failed to file a response to NEBCO's motion for summary judgment, NEBCO charges that LINA fails to identify any issue of material fact in Plaintiff's claim against it and misinterprets the applicable law. NEBCO argues that the cases cited by LINA are either irrelevant or support NEBCO's, not LINA's, arguments. NEBCO insists none of them held that a party was a proper defendant simply because it exerted control over the plan. It insists that an entity that is not the plan, plan administrator or plan sponsor is not a proper defendant under § 1132(a)(1)B) merely because it exerts some control over the administration of the Plan. Thus LINA's evidence is irrelevant to the legal standard established in this Circuit.

**C.  *Court's Decision***

The Court has previously addressed the issue of proper defendants to a § 1132(a)(1)(B) claim in denying CBCA's motion for partial summary judgment. #93. It concluded that there are no clear established criteria as to what constitutes sufficient administrative control over the plan for purposes of liability of a plan administrator. There are fact issues here as to the degree of NEBCO's involvement and control.

Nevertheless, because the Court has concluded that LINA's motion for summary judgment should be granted and that as a matter of law under ERISA there was no abuse of discretion in the denial of Plaintiff's claim, NEBCO's motion is MOOT.

### V.   NEBCO's Motion to Dismiss LINA's Cross Claim (#82)

LINA's first cross claim states, "to the extent that Plaintiff is able to establish that she has incurred damages as alleged in her claims against LINA, LINA asserts that such damages, if any, were caused, in whole or in part, by the conduct of NEBCO." #62-1 at ¶n72.   In addition, or in the alternative, LINA claims NEBCO must indemnify LINA for any damages caused by NEBCO's wrongful acts.   *Id.* at ¶ 73.   Because Plaintiff has failed to prevail on her claim, both the claims for contribution and indemnity and NEBCO's motion to dismiss are also MOOT.

### VI. LINA's Alternative Motion for Leave to Amend (#85)

LINA's alternative motion for leave to amend cross claims is also MOOT.

Accordingly, for the reasons stated above, the Court

ORDERS that LINA's motion for summary judgment (#69) is GRANTED.   It is further

ORDERED that NEBCO's motion for summary judgment (#80) and motion to dismiss LINA's cross claim (#82) and LINA's motion for leave to amend cross claims (#87) are MOOT.   All claims against CBCA Administrators, Inc., A.C. Strip, as Receiver for CBCA

Administrators, Inc., CBCA Insurance Services, Inc., San Jacinto Agency, Inc. and The Loge Group, and NEBCO are DISMISSED with prejudice.

**SIGNED** at Houston, Texas, this 15th day of  February , 2011.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE